Citation Nr: 1443677 
Decision Date: 09/30/14 Archive Date: 10/06/14

DOCKET NO. 10-34 001 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Pittsburgh, Pennsylvania


THE ISSUE

Entitlement to initial increased ratings for a bilateral foot disability manifested by pes cavus, plantar fasciitis, and bilateral calcaneal spurs, rated 10 percent disabling prior to October 4, 2013, and 30 percent therefrom, to specifically include whether entitlement to a separate compensable rating for bilateral calcaneal spurs is warranted.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant



ATTORNEY FOR THE BOARD

A. Cryan, Counsel


INTRODUCTION

The Veteran had active service from May 1982 to May 1998. He also had 27 years and 29 days of total prior inactive service. 

This matter comes before the Board of Veteran's Appeals (Board) on appeal from a September 2008 rating decision of the above Regional Office (RO) of the Department of Veterans Affairs (VA) which effectuated a May 2008 Board decision and granted service connection for bilateral calcaneal spurs and assigned a 0 percent (noncompensable) disability rating, effective from August 10, 2000. In the September 2008 rating decision, the RO also indicated that the noncompensable evaluation was assigned and included in with the Veteran's current service-connected disabilities of pes cavus and plantar fasciitis, and that the symptoms of pain were already compensable under the Veteran's claw foot and plantar fasciitis conditions. 

In March 2011, the Veteran testified at a Travel Board hearing before the undersigned Veterans Law Judge. A transcript of that hearing is of record. 

The Veteran's claim was remanded by the Board in June 2013 and January 2014.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2002).


FINDINGS OF FACT

1. For the period prior to October 4, 2013, the Veteran's bilateral foot disability, manifested by pes cavus, plantar fasciitis, and bilateral calcaneal spurs, was manifested by pain over the entire sole of his foot, over the heel, and over the metatarsal heads with activity and some limitation of dorsiflexion of the ankle, without functional impairment due to calcaneal spurs. 

2. For the period since October 4, 2013, the Veteran's bilateral foot disability, manifested by pes cavus, plantar fasciitis, and bilateral calcaneal spurs, has been manifested by all toes tending to dorsiflexion, tenderness under the metatarsal heads, bilaterally, and shortened plantar fascia, without functional impairment due to calcaneal spurs.

 
CONCLUSIONS OF LAW

1. For the period prior to October 4, 2013, the criteria for an initial rating in excess of 10 percent for a bilateral foot disability manifested by pes cavus, plantar fasciitis, and bilateral calcaneal spurs or a separate rating for bilateral calcaneal spurs have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.321, 4.7, 4.72, Diagnostic Code 5278 (2013).

2. For the period since October 4, 2013, the criteria for an initial rating in excess of 30 percent for a bilateral foot disability manifested by pes cavus, plantar fasciitis, and bilateral calcaneal spurs or a separate rating for bilateral calcaneal spurs have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.321, 4.7, 4.72, Diagnostic Code 5278 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Upon receipt of a complete or substantially complete application, VA must notify the claimant and any representative of any information, medical evidence, or lay evidence not previously provided to VA that is necessary to substantiate the claim. The notice must: (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and (3) inform the claimant about the information and evidence the claimant is expected to provide. 38 U.S.C.A. §§ 5103, 5103A, 5107 (West 2002 & Supp. 2013); 38 C.F.R. § 3.159 (2013); Pelegrini v. Principi, 18 Vet. App. 112 (2004). If VA does not provide adequate notice of any element necessary to substantiate the claim, or there is any deficiency in the timing of the notice, the burden is on the claimant to show that prejudice resulted from a notice error, rather than on VA to rebut presumed prejudice. Shinseki v. Sanders, 129 S.Ct. 1696 (2009). 

The Board finds that any defect with regard to the timing or content of the notice to the appellant is harmless because of the thorough and informative notices provided throughout the adjudication and because the appellant had a meaningful opportunity to participate effectively in the processing of the claim decided herein with an adjudication of the claim by the RO subsequent to issuance of the required notice. The record does not show prejudice to the appellant, and the Board finds that any defect in the timing or content of the notice has not affected the fairness of the adjudication. Mayfield v. Nicholson, 19 Vet. App. 103 (2005); Dingess v. Nicholson, 19 Vet. App. 473 (2006). Specifically, the Veteran was notified in letters dated in March 2001, May 2001, April 2003, January 2004, November 2004, May 2007, July 2007, and July 2013.

The Veteran has neither alleged nor demonstrated any prejudice with regard to the content or timing of the notice provided. Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (burden of showing that an error is harmful or prejudicial falls on party attacking agency determination); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

Thus, VA has satisfied its duty to notify the appellant and had satisfied that duty prior to the supplemental statement of the case dated in July 2014. Overton v. Nicholson, 20 Vet. App. 427 (2006) (veteran afforded a meaningful opportunity to participate effectively in adjudication of claim, and therefore notice error was harmless). 

The Board also finds that the duty to assist requirements have been fulfilled as to the issue decided herein. All relevant, identified, and available evidence has been obtained, and VA has notified the appellant of any evidence that could not be obtained. The appellant has not referred to any additional, unobtained, relevant, available evidence. VA has obtained several examinations with respect to the claim. Thus, the Board finds that VA has satisfied the duty to assist provisions of law. No further notice or assistance to the Veteran is required to fulfill VA's duty to assist him in development. Smith v. Gober, 14 Vet. App. 227 (2000); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); Quartuccio v. Principi, 16 Vet. App. 183 (2002).

Disability ratings are determined by the application of a schedule of ratings, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. § 4.1 (2013). Where entitlement to compensation has already been established and an increase in the assigned rating is at issue, it is the present level of disability that is of primary concern. Although the recorded history of a particular disability should be reviewed in order to make an accurate assessment under the applicable criteria, the regulations do not give past medical reports precedence over current findings. Francisco v. Brown, 7 Vet. App. 55 (1994). However, staged ratings are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2013). The rating of the same disability under various diagnoses is to be avoided. 38 C.F.R. § 4.14 (2013).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance. It is essential that the examination upon which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. A little used part of the musculoskeletal system may be expected to show evidence of disuse, either through atrophy, the condition of the skin, absence of normal callosity or the like. 38 C.F.R. § 4.40 (2013).

Evidence of pain, weakened movement, excess fatigability, or incoordination must be considered in determining the level of associated functional loss, taking into account any part of the musculoskeletal system that becomes painful on use. 38 C.F.R. § 4.40 (2013); DeLuca v. Brown, 8 Vet. App. 202 (1995). The provisions regarding the avoidance of pyramiding do not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including flare ups. 38 C.F.R. § 4.14 (2013). However, the provisions of 38 C.F.R. § 4.40 and 38 C.F.R. § 4.45 should only be considered in conjunction with the diagnostic codes predicated on limitation of motion. Johnson v. Brown, 9 Vet. App. 7 (1996).

The intent of the rating schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59 (2013).

With respect to the joints, the factors of disability reside in reductions of their normal excursion of movements in different planes. Inquiry will be directed to these considerations: (a) less movement than normal (due to ankylosis, limitation or blocking, adhesions, tendon-tie-up, contracted scars, etc.); (b) more movement than normal (from flail joint, resections, nonunion of fracture, relaxation of ligaments, etc.); (c) weakened movement (due to muscle injury, disease or injury of peripheral nerves, divided or lengthened tendons, etc.); (d) excess fatigability; (e) incoordination, impaired ability to execute skilled movements smoothly; and (f) pain on movement, swelling, deformity or atrophy of disuse. Instability of station, disturbance of locomotion, interference with sitting, standing and weight-bearing are related considerations. 38 C.F.R. § 4.45 (2013).

The words slight, moderate, and severe are not defined in the Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are equitable and just. 38 C.F.R. § 4.6 (2013). Use of descriptive terminology such as "mild" by medical examiners, although an element of evidence to be considered by the Board, is not dispositive of an issue.

VA outpatient treatment reports reference sensory complaints related to the Veteran's feet which was attributed to peripheral neuropathy. In September 2001, the Veteran reported pain in the heels and plantar feet bilaterally. In October 2001, the Veteran was seen for a report of bilateral foot pain, numbness, and tingling. He was referred for a neurology consultation. In April 2002, the Veteran was assessed with chronic bilateral foot pain which was noted to not be vascular disease. In July 2002, the Veteran was seen for a report of heel pain. In November 2002, the Veteran was diagnosed with bilateral plantar fasciitis, bilateral posterior tibialis tendonitis, and right first web space Morton's neuroma. He was prescribed custom fitted orthotics to support his feet. In March 2009, the Veteran was seen for a report of bilateral heel pain for which he was prescribed shoe inserts. The examiner noted that while the Veteran had burning, aching, and painful feet, the problems originated from lumbar L4-S1 compression due to spinal stenosis, degeneration of the vertebral disc, spinal surgery, and arthritic changes/spinal fusion. The Veteran was assessed with plantar fasciitis and peripheral neuropathy. 

At a February 2001 VA examination, the Veteran reported discomfort in his feet. He denied weakness, stiffness, swelling, heat, redness, instability, giving way, locking, fatigability, and lack of endurance. Flare-ups occurred only after walking long periods of time or standing for long periods approximately once or twice a month with no additional limitation of motion or functional impairment during the flare-up. The Veteran did not use any assistive devices. Physical examination revealed that the Veteran ambulated with a normal gait. Examination of the musculoskeletal system was normal. X-rays of the bilateral feet revealed posterior calcaneal spurs in both feet, there was mild hallux valgus deformity on the left, and there were no recent fractures or acute bony changes. The examiner assessed the Veteran with chronic strain of the feet, plantar fasciitis, bilateral calcaneal spurs, and left foot hallux valgus. 

At a March 2004 VA examination, the Veteran reported pain over the entire sole of his foot, over the heel, and over the metatarsal heads with activity. He indicated that he had previously used shoe inserts with only minimal relief of his symptoms. He was not using any inserts at the examination because the old ones were worn out. Physical examination revealed normal heel alignment without any varus or valgus on standing. The examiner noted a significant cavus deformity of both feet. There was no callous formation over the heels or metatarsal heads. With dorsiflexion of the foot, the Veteran experienced pain along the plantar fascia which was prominently palpable. There was no point tenderness at the insertion of the plantar fascia in the anterior aspect of the os calcis. Range of motion in both ankles in dorsiflexion was from 0 to 10 degrees and plantar flexion from 0 to 45 degrees. Both feet showed excessive flexion attitude of the toes in non-weightbearing status but there was adequate intrinsic muscle strength in the feet. X-rays of both feet revealed an increased cavus with prominence of the tarsometatarsal articulation dorsally. There was some osteophytic reaction seen in the heel at the insertion of the Achilles tendon of both feet. The examiner diagnosed significant pes cavus with chronic plantar fasciitis bilaterally. 

In December 2004, the March 2004 VA examiner, an orthopedic surgeon, reviewed an x-ray and noted that the question of whether an osteophyte represents a heel spur is a purely semantic one. The term "heel spur" is used interchangeably with an osteophytic reaction at the origin of the plantar fascia from the calcaneus. As such it is only a radiological finding of no clinical consequences. He concluded that neither the minute anterior osteophytes (3 by 1 millimeters (mm) on the right and 4 by 0.5 mm on the left) nor the more substantial posterior osteophytes had any bearing on the Veteran's disability and therefore their origin and causes were of no consequences.

At a March 2006 VA peripheral neuropathy examination, the Veteran reported numbness, tingling, and burning in both feet extending up to the mid-calf. Physical examination revealed decreased sensation to touch by monofilament in bilateral lower extremities up to the middle of the calf. Motor power bilateral upper and lower extremities were normal. Reflexes of the bilateral knee and ankle jerk were absent. There was also an absent vibration sensation in the bilateral lower extremities.

At a November 2007 VA feet examination, the Veteran denied heel pain, especially with the first step out of bed which would be classic for plantar fasciitis. He reported that multiple treatments including night splints, heel cord stretching, and plantar fasciitis ultrasound never really helped him and his symptoms improved with the use of Lyrica for peripheral neuropathy. He indicated that he used no assistive devices or orthotics. The Veteran reported numbness and a cold sensation in his feet. He was able to perform activities of daily living. Physical examination of the transverse and longitudinal arches was within normal limits. There was no clawing of the toes and no evidence of pes cavus or pes planus. Range of motion of the ankles revealed 20 degrees of dorsiflexion without excessive tightness of the heel cord to 40 degrees of plantar flexion. There was some mild tenderness to palpation over the base of his plantar fascia with diffuse pain and hyperesthesias on the plantar aspect of the entirety of the feet. X-rays of the feet were within normal limits. There was no evidence of pes cavus and normal calcaneal inclination. There was evidence of enthesopathic changes at the insertion of the Achilles tendon and a mild osseous projection into the flexor digitorum brevis origin. The examiner assessed the Veteran with idiopathic mixed polyneuropathy of the bilateral lower extremities and mild plantar fasciitis. The examiner indicated that the Veteran's heel spurs could not be directly correlated to plantar fasciitis and that the majority of the Veteran's complaints were secondary to mixed polyneuropathy based on the Veteran's examination, history and response to therapies. The examiner concluded that the Veteran's calcaneal spurs were not related to, caused by, or aggravated by active service or the Veteran's service-connected foot disorder especially pes cavus which he did not see. The examiner noted that calcaneal spurs or heel spurs are an incidental radiographic finding and rarely correlated to either the presence or the degree of plantar fasciitis. The examiner noted that the findings were more consistent with symptomatic polyneuropathy which was markedly improved on Lyrica. 

At a March 2011 hearing, the Veteran testified that his feet were numb up his calf. He also reported that he had a cold sensation and aching of the feet. He indicated that he had been prescribed inserts for his shoes. The Veteran indicated that he used a riding mower to cut his grass. The Veteran's representative noted that the Veteran had symptomatology in different parts of his foot. 

In October 2013, the examiner noted diagnoses of hammer toes, pes cavus, bilateral calcaneal spurs, and plantar fasciitis. The Veteran indicated that he had been prescribed orthotics in the past but they had worn out and he had not had them replaced. With regard to hammer toes, all five toes on the right foot were affected and all toes except the little toe were affected on the left foot. The examiner noted that pes cavus resulted in all toes tending to dorsiflexion, tenderness under both metatarsal heads bilaterally, and shortened plantar fascia. There were no callosities present. The examiner noted dorsiflexion of the ankle of 5 degrees bilaterally which remained unchanged after three repetitions with pain the end range of motion bilaterally. X-rays of the feet revealed bilateral heel spurs and bilateral hammer digit deformity. The Veteran's bilateral foot disability resulted in the Veteran being incapable of employment involving prolonged walking and/or standing.

In a February 2014 addendum, the October 2013 VA examiner indicated that the 5 degrees of dorsiflexion of the ankles is likely reduced even further with repetitive use beyond the three repetitions required by DeLuca. He also indicated that findings reported at the VA examination were attributable to the Veteran's bilateral foot disability as opposed to bilateral peripheral neuropathy.

The Veteran's bilateral foot disability was rated under Diagnostic Code 5278. 38 C.F.R. § 4.72. Diagnostic Code (DC) 5278 provides that a noncompensable (0 percent) rating is assignable for slight acquired claw foot (pes cavus). A 10 percent rating is assignable for acquired claw foot with the great toe dorsiflexed, some limitation of dorsiflexion at the ankle, definite tenderness under metatarsal heads, bilateral or unilateral. A 20 percent rating is assignable for acquired claw foot with all toes tending to dorsiflexion, limitation of dorsiflexion at the ankle to right angle, shortened plantar fascia, and marked tenderness under the metatarsal heads if the involvement is unilateral. A 30 percent rating is assignable if the involvement is bilateral. A 30 percent rating is also assignable for acquired claw foot with marked contraction of plantar fascia with dropped forefoot, all toes hammer toes, very painful callosities, marked varus deformity if the involvement is unilateral. If it is bilateral, a 50 percent rating is assignable. 38 C.F.R. § 4.71a, DC 5278.

Period prior to October 4, 2013

For the period prior to October 4, 2013, the evidence does not establish that an initial rating in excess of 10 percent is warranted. 

As a preliminary matter, the Board notes that the Veteran is not entitled to a separate rating for bilateral heel spurs. As noted by the VA orthopedic surgeon in December 2004, the term "heel spur" is used interchangeably with an osteophytic reaction at the origin of the plantar fascia from the calcaneus and is only a radiological finding of no clinical consequences. He concluded that neither the minute anterior nor the more substantial posterior osteophytes had any bearing on the Veteran's disability and therefore their origin and causes were of no consequences. Additionally, the November 2007 VA examiner opined that the Veteran's calcaneal spurs were not related to, caused by, or aggravated by active service or the Veteran's service-connected foot disorder especially pes cavus which he did not see. The examiner noted that calcaneal spurs or heel spurs are incidental radiographic finding and rarely correlated to either the presence or the degree of plantar fasciitis. Consequently, as the spurs are not related to the service-connected bilateral foot disability and do not result in functional impairment, the Veteran is not entitled to a separate compensable rating for bilateral calcaneal spurs. 

For the relevant time period at issue, the evidence appears to be at odds. The February 2001 VA examiner noted calcaneal spurs in both feet and mild hallux valgus deformity on the left. The Veteran was assessed with chronic strain of the feet, plantar fasciitis, bilateral calcaneal spurs, and left foot hallux valgus. While the March 2004 VA examiner noted "significant cavus deformity of both feet," the November 2007 VA examiner indicated that there was no evidence of pes cavus and normal calcaneal inclination. Moreover, the March 2004 examiner did not report that the Veteran's acquired claw foot was manifested by all toes tending to dorsiflexion, limitation of dorsiflexion at the ankle to right angle, shortened plantar fascia, and marked tenderness under the metatarsal heads either unilaterally or bilaterally in order to warrant a 20 or 30 percent rating under DC 5278. There was some limitation of dorsiflexion of the ankle at the time of the March 2004 VA examination; however, the November 2007 VA examiner reported normal dorsiflexion of the ankle, no clawing of the toes, and no evidence of pes cavus or pes planus. There was mild tenderness to palpation over the base of the plantar fascia with diffuse pain and hyperesthesias on the plantar aspect of the entirety of the feet. The examiner attributed the Veteran's foot symptoms to nonservice-connected polyneuropathy which was improving on Lyrica. Relevant VA treatment reports indicate that the Veteran's foot symptoms were related to peripheral neuropathy and a lumbar spine disability. Consequently, the Veteran is not entitled to a rating in excess of 10 percent under DC 5278 during the relevant time period at issue. 

The Board has also considered whether an increased rating is warranted under any other DCs. The evidence does not establish that the Veteran has been diagnosed with acquired flatfoot (DC 5276), bilateral weak foot (DC 5277), anterior metatarsalgia (DC 5279), severe unilateral hallux rigidus (DC 5281), malunion or nonunion of the tarsal or metatarsal bones (DC 5282), or any other foot injuries (DC 5284) and as such the Veteran is not entitled to a compensable rating under any of those DCs. With regard to DC 5280, while there is evidence that the Veteran was diagnosed with mild hallux valgus at the 2001 VA examination, the highest rating available under this DC is 10 percent. Moreover, there is no evidence that the bilateral foot disability was severe or necessitated an operation with resection of the metatarsal head in order to warrant a compensable rating under DC 5280. Additionally, while the Veteran was diagnosed with hammer toes at the 2013 VA examination, the evidence does not establish that this disability was diagnosed prior to that time and as such the bilateral foot disability does not warrant a higher rating under DC 5282. Additionally, there was no evidence of any functional loss which would equate to a higher rating during the relevant time period. DeLuca v. Brown, 8 Vet. App. 202 (1995). 

In sum, the Board finds that the Veteran's bilateral foot disability does not warrant a compensable rating at any time during the period prior to October 4, 2013. The preponderance of the evidence is against the claim for an initial increased rating and the claim is denied. 38 U.S.C.A. § 5107(b) (West 2002); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


Period since October 4, 2013

For the relevant period since October 4, 2013, the Veteran's bilateral foot disability does not warrant an initial rating in excess of 30 percent. In order to obtain a rating higher than 30 percent under DC 5278, there must be evidence of marked contraction of the plantar fascia with dropped forefoot, all toes hammer toes, very painful callosities, and marked varus deformity bilaterally. The evidence as reported above does not establish that the Veteran's symptoms equate to a rating higher than the currently assigned 30 percent. There is no evidence of marked contraction of the plantar fascia with dropped forefoot, very painful callosities, or marked varus deformity bilaterally. Consequently, the bilateral foot disability does not warrant a rating in excess of 30 percent for the relevant time period at issue. 

The Board has considered whether an increased rating is warranted under any other relevant DCs relating to disabilities of the feet. However, the only DC which provides for a rating in excess of 30 percent is DC 5276 which pertains to acquired flatfoot which, as noted, has not been diagnosed. Additionally, there was no evidence of any functional loss which would equate to a higher rating during the relevant time period. DeLuca v. Brown, 8 Vet. App. 202 (1995). While the October 2013 VA examiner, in the February 2014 addendum, indicated that dorsiflexion of the ankles is likely reduced further with repetitive use beyond the three repetitions required by DeLuca, he specifically noted that there was no change in dorsiflexion with three repetitions of motion.

Accordingly, the Board finds that the preponderance of the evidence is against the assignment of an increased rating for the bilateral foot disability during any portion of the relevant time period at issue and the claim for increase is denied. 38 U.S.C.A. § 5107(b) (West 2002); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

The Board has considered whether an extraschedular rating is warranted in this case. The threshold factor for extraschedular consideration is a finding that the evidence presents such an exceptional disability picture that the available schedular rating for the service-connected disability is inadequate. Thun v. Peake, 22 Vet. App. 111 (2008); Fisher v. Principi, 4 Vet. App. 57 (1993); 38 C.F.R. § 3.321(b)(1) (2013). Factors for consideration in determining whether referral for an extraschedular rating is necessary include marked interference with employment or frequent periods of hospitalization that indicate that application of the regular schedular standards would be impractical. Thun v. Peake, 22 Vet. App. 111 (2008); 38 C.F.R. § 3.321(b)(1) (2013).

The Board finds that referral is not warranted in this case. The evidence of record does not show that the Veteran's service-connected bilateral foot disability is not adequately contemplated by the available schedular ratings or that the disability presents an exceptional or unusual disability picture with such related factors as marked interfere with employment or frequent periods of hospitalization. None of the examiners of record indicated that the Veteran's bilateral foot disability would markedly interfere with his occupation. The Board notes that while the October 2013 VA examiner indicated that the Veteran's bilateral foot disability resulted in the Veteran being incapable of employment involving prolonged walking and/or standing, there is no indication that the Veteran is currently employed.
Consequently, this finding is not tantamount to marked interference with employment. Additionally, there is no evidence that the Veteran has had frequent periods of hospitalization for his bilateral foot disability. The Board concludes that the manifestations of the Veteran's bilateral foot disability are not exceptional and the schedular evaluations inadequate. Consequently, the Board finds that the evidence does not show that the criteria for referral are met. 38 C.F.R. § 3.321(b)(1) (2013); Bagwell v. Brown, 9 Vet. App. 337 (1996); Floyd v. Brown, 9 Vet. App. 88 (1996); Shipwash v. Brown, 8 Vet. App. 218 (1995).

 (CONTINUED ON NEXT PAGE)


ORDER

Entitlement to increased initial ratings for a bilateral foot disability manifested by pes cavus, plantar fasciitis, and bilateral calcaneal spurs, rated 10 percent disabling prior to October 4, 2013, and 30 percent therefrom, to specifically include whether entitlement to a separate compensable rating for bilateral calcaneal spurs, is denied.



____________________________________________
BARBARA B. COPELAND
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs